2021 IL App (1st) 162956

FIFTH DIVISION
DECEMBER 30, 2021

No. 1-16-2956

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 05 CR 6560 |
| | ) | 05 CR 1516 |
| | ) | |
| STEVEN ZIRKO, | ) | Honorable |
| | ) | Timothy Chambers, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant-appellant, Steven Zirko, convicted of two counts of first degree murder and one count of solicitation of murder, appeals the second stage dismissal of his postconviction petition. On appeal, Mr. Zirko argues that (1) his postconviction counsel was involved in a conflict of interest with respect to his case where counsel argued his own ineffectiveness, (2) counsel failed to provide a reasonable level of assistance where counsel did not attach supporting documents to the postconviction petition, and (3) the motion for substitution of judge was erroneously denied. For the reasons that follow, we affirm the circuit court of Cook County's judgment denying Mr. Zirko's motion for substitution of judge, but we vacate the circuit court's judgment dismissing Mr. Zirko's postconviction petition. We remand the case for further postconviction proceedings.

¶ 2                                        BACKGROUND

¶ 3     On December 13, 2004, Mr. Zirko shot and stabbed his ex-girlfriend and her mother in his

ex-girlfriend's home in Glenview, Illinois.[1] Mr. Zirko was represented by attorney Stephen Richards at a jury trial, which commenced on June 8, 2009. Mr. Zirko was convicted of two counts of first degree murder and one count of solicitation of murder. After his conviction, Mr. Zirko filed a *pro se* motion for a new trial based on ineffective assistance of trial counsel. Although the motion was stamped "received" by the clerk of the circuit court, the court never ruled on the motion. Meanwhile, defense counsel filed a motion for a new trial, which was denied. Mr. Zirko was sentenced to two natural life sentences for the murders and a concurrent 30-year sentence for solicitation of murder.

¶ 4    On direct appeal, Mr. Zirko was represented by appointed counsel from the Office of the State Appellate Defender (OSAD). His counsel argued, *inter alia*, that trial counsel was ineffective for requesting that the murder and solicitation of murder charges be joined. *People v. Zirko*, 2012 IL App (1st) 092158, ¶ 57. This court found that argument meritless and affirmed Mr. Zirko's conviction. *Id.* ¶¶ 60, 74.

¶ 5    On October 3, 2013, Mr. Zirko, through his original trial counsel Stephen Richards, filed a postconviction petition. A little over one month later, on November 14, 2013, Mr. Zirko moved for substitution of judge for cause. In the motion, he argued that the trial judge had not been impartial during the trial. He then highlighted that the judge had chastised defense counsel for "laughing" and "smirking" during the trial but did not comment on or chastise the assistant state's attorney's similar behavior. In addition, Mr. Zirko alleged that the trial judge commented, in front of the jury, that he needed to "lecture" defense counsel. Therefore, he did not want the original trial judge to hear his postconviction petition.

---

[1]The facts of this case are set forth in detail in *People v. Zirko*, 2012 IL App (1st) 092158. We repeat only those facts necessary to resolve the issues now on appeal.

¶ 6    In response to the motion for substitution of judge, which was heard by a different judge, the trial judge who was the subject of the motion proffered a signed document, purporting to be an affidavit although it was not notarized. In the document, the judge stated that he could be fair and impartial to Mr. Zirko. The judge also denied denigrating defense counsel in front of the jury and further denied that he "allow[ed] laughter and smiles from one side and not the other."

¶ 7    On December 20, 2013, the trial court denied Mr. Zirko's motion for substitution of judge.

¶ 8    On February 18, 2016, attorney Richards filed the second amended postconviction petition at issue here. The petition raised 10 claims of ineffective assistance of appellate counsel, including a claim that appellate counsel failed to argue that the trial court was biased in favor of the State. Additionally, the petition raised six claims of ineffective assistance of *trial counsel*. On May 6, 2016, the State moved to dismiss the second amended petition.

¶ 9    In October 2016, following arguments on the State's motion, the court granted the motion to dismiss the second amended petition. Mr. Zirko timely appealed on October 26, 2016.

¶ 10    On appeal, Mr. Zirko continued to be represented by attorney Richards, his initial trial counsel. In his brief, attorney Richards argued several claims of ineffective assistance of appellate counsel as well as five claims of ineffective assistance of trial counsel (himself) on behalf of Mr. Zirko. Specifically, as to trial counsel, attorney Richards argued that trial counsel was ineffective for failing to (1) bring Mr. Zirko's *pro se* posttrial claims of ineffective assistance of counsel to the trial court's attention, (2) keep the victims' family members out of the courtroom by subpoenaing them as witnesses and moving to exclude them from the courtroom, (3) investigate and develop a theory of an alternative suspect, (4) introduce photographs of Mr. Zirko's hands following the murder to prove that the cuts on his hands were caused by eczema, and (5) elicit exculpatory evidence from the State's forensic expert. In addition, attorney Richards argued on

behalf of Mr. Zirko that he (attorney Richards) provided unreasonable assistance in postconviction proceedings, where he failed to investigate Mr. Zirko's actual innocence and failed to raise additional claims of ineffective assistance of himself as trial counsel.

¶ 11     After the completion of appellate briefing in this court, on the court's own motion, we requested supplemental briefing on the issue of whether attorney Richards had a conflict of interest in that he was arguing his own ineffectiveness. Attached to attorney Richards' supplemental brief was an affidavit from Mr. Zirko asking for new counsel to be appointed to represent him in this court instead of attorney Richards. In light of Mr. Zirko's affidavit requesting new counsel, we did not reach the issue of whether attorney Richards had a conflict of interest and, instead, granted Mr. Zirko's request to appoint new counsel to represent him on appeal. We appointed OSAD to represent Mr. Zirko and further ordered appointed counsel to either supplement or stand on attorney Richards' original appellate brief.

¶ 12     OSAD supplemented attorney Richards' brief, arguing that attorney Richards did not provide reasonable assistance because (1) he had a conflict of interest and (2) he failed to attach supporting documentation to Mr. Zirko's postconviction petition. OSAD also argued that the trial court erred in denying Mr. Zirko's motion for substitution of judge. In addition to supplemental briefing in order to resolve this matter, we also entertained oral argument by the parties.

¶ 13                                        ANALYSIS

¶ 14     We note that we have jurisdiction to review this matter, as Mr. Zirko timely appealed the dismissal of his postconviction petition. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 15     Mr. Zirko presents the following issues on appeal: (1) whether his postconviction counsel (attorney Richards) labored under a conflict of interest; (2) whether his postconviction counsel

(again, attorney Richards) provided unreasonable assistance; and (3) whether the trial court erred in denying his motion for substitution of judge. We take each issue in turn.

¶ 16    The Post-Conviction Hearing Act (Act) allows a defendant who is imprisoned in a penitentiary to challenge his conviction or sentence for violations of his federal or state constitutional rights. 725 ILCS 5/122-1 (West 2016); see also *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). The Act establishes a three-stage process for adjudicating a postconviction petition. See 725 ILCS 5/122-1 *et seq.* (West 2016). During the first stage, the trial court must independently review the petition, taking the allegations as true, in order to determine whether the petition is frivolous or patently without merit. *People v. Tate*, 2012 IL 112214, ¶ 9; 725 ILCS 5/122-2.1(a)(2) (West 2016)). If the petition survives dismissal at this stage, it advances to the second stage, where counsel may be appointed, and the State may move to dismiss the petition. *People v. Harris*, 224 Ill. 2d 115, 126 (2007). At the second stage, the defendant must make a substantial showing of a constitutional violation in order to proceed to the third and final stage of the postconviction process and obtain an evidentiary hearing. *Id.* (citing 725 ILCS 5/122-6 (West 2016)).

¶ 17    Mr. Zirko argues that his retained postconviction counsel, attorney Stephen Richards, operated under a conflict of interest and/or provided unreasonable assistance where he did not attach the necessary documents or affidavits to support Mr. Zirko's postconviction claims. Mr. Zirko claims, therefore, he is entitled to a new second-stage proceeding because his counsel labored under a conflict and could not represent him fairly.

¶ 18    There is no constitutional right to counsel in postconviction proceedings, and as such, a postconviction petitioner cannot claim sixth amendment ineffective assistance of counsel rights in such proceedings. *People v. Flores*, 153 Ill. 2d 264, 276 (1992). Instead, a petitioner is only entitled to the level of assistance of counsel provided by the Act. *Id.* That assistance has been defined by

Illinois courts as a *reasonable* level of assistance of counsel. *Id.*; see also *People v. Schlosser*, 2012 IL App (1st) 092523, ¶ 18. The right to reasonable assistance of postconviction counsel includes the right to conflict-free representation. See *People v. Hardin*, 217 Ill. 2d 289, 300 (2005). Conflict-free representation, in turn, is " 'assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations.' " *People v. Green*, 2020 IL 125005, ¶ 20 (quoting *People v. Spreitzer*, 123 Ill. 2d 1, 13-14 (1988)). Whether an attorney labored under a conflict of interest while representing a defendant is a question of law, which we review *de novo. People v. Short*, 2014 IL App (1st) 121262, ¶ 108.

¶ 19     There are two categories of conflicts of interest: actual and *per se.* Mr. Zirko alleges that attorney Richards created a *per se* conflict of interest, which occurs where facts about a defense attorney's status, by themselves, lead to a disabling conflict. *People v. Hernandez*, 231 Ill. 2d 134, 142 (2008). There are three categories of *per se* conflicts, as recently clarified by our supreme court: (1) when defense counsel has a contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) when defense counsel contemporaneously represents a prosecution witness; and (3) when defense counsel was a former prosecutor who was personally involved in the prosecution of the defendant. *People v. Yost*, 2021 IL 126187, ¶ 66. When there is a *per se* conflict of interest, the defendant need not show that his counsel's performance was affected by the conflict: prejudice is presumed. *People v. Carr*, 2020 IL App (1st) 171484, ¶ 26. Furthermore, a *per se* conflict results in automatic reversal unless a defendant waives his right to conflict-free counsel. *Id.*

¶ 20     Mr. Zirko maintains that his attorney, Mr. Richards, served as both trial counsel and postconviction counsel and therefore had a *per se* conflict of interest. Mr. Zirko claims that, on appeal from the dismissal of his postconviction petition at the second stage, attorney Richards

argued his own ineffectiveness as trial and postconviction counsel. Needless to say, this does not fall into any of the three categories of *per se* conflicts of interest identified by our supreme court. Mr. Zirko urges us to create a fourth category for *per se* conflicts of interest, which he asserts arises when an attorney alleges his own ineffectiveness. But our supreme court has expressly rejected arguments for the creation of additional categories and has unequivocally stated that it would only recognize the three categories outlined above as the bright-line test for determining *per se* conflicts of interest. *Green*, 2020 IL 125005, ¶ 43; see also *In re Br. M.*, 2021 IL 125969, ¶ 55 (referring to the three categories as a "closed set" and stating "any other situations may be examined for an actual conflict of interest").

¶ 21    Responding to these cases, as well as questions from the court during oral argument, Mr. Zirko contended, in a tangential manner, that we should also consider whether attorney Richards had an *actual* conflict of interest in representing Mr. Zirko. However, because Mr. Zirko did not make a well-developed argument regarding an *actual* conflict of interest in his appellate brief, this court, on its own motion, in the interest of justice, ordered the parties to submit supplemental briefing on whether attorney Richards had an actual conflict of interest. The parties submitted their supplemental briefing on the issue, and we have now considered their respective arguments regarding whether an *actual* conflict of interest existed in this case.

¶ 22    Unlike a *per se* conflict of interest, an actual conflict does not result in an automatic reversal, as a defendant must show some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict. *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 38. To establish an actual conflict, a defendant must do more than proffer speculative allegations and conclusory statements. *Id.*

¶ 23    According to Mr. Zirko's supplemental brief, his postconviction counsel, attorney

Richards, failed to support the postconviction petition's claims that attorney Richards was ineffective as trial counsel for numerous reasons. Specifically, Mr. Zirko's supplemental brief asserts that as postconviction counsel, attorney Richards failed to support his own ineffectiveness by not documenting the petition's claims that: Mr. Zirko's hands had eczema, causing the alleged cuts which the State used as part of its evidence of guilt; the victims' family made comments audible to the jurors; there was an alternative suspect theory for counsel to pursue; a defense gun residue expert would testify in a manner favorable to Mr. Zirko; and another witness would testify that the only hair evidence in the case could not be associated with Mr. Zirko. Regarding the eczema claim, the petition asserted that attorney Richards was ineffective for failing to introduce photographs of Mr. Zirko's eczema as an alternative explanation for the alleged cuts on his hands after the murder. Mr. Zirko points out that attorney Richards acknowledged, in the petition, that he had photographs of Mr. Zirko's hands in his possession, which showed the eczema; yet attorney Richards did not attach the eczema photographs to the petition or offer an explanation for their absence. Mr. Zirko asserts that this failing caused his petition to fall short of the required supporting documentation. He argues that this failure created a shortcoming, which highlights an actual conflict of interest in that attorney Richards did an incomplete job in presenting the postconviction petition.

¶ 24    Since the alleged cuts on Mr. Zirko's hands were an element of the State's case to establish that he was the murderer and Mr. Zirko's postconviction petition argued that the eczema photographs would have offered an alternative explanation for the alleged cuts, attorney Richards had a duty to support the petition with *the eczema photographs* and it was inexplicable when he failed to do so. See *People v. Dupree*, 2018 IL 122307, ¶ 32 (the Act unambiguously provides that an allegation of a constitutional violation in a postconviction petition must be supported by

affidavits, records, or other evidence). Yet, attorney Richards did not attach the eczema photographs, which would have countered an element of proof offered by the State in gaining a conviction, despite admittedly having the photographs in his possession.

¶ 25    Since attorney Richards undertook to argue ineffective assistance of counsel, he had a duty to do so "zealously" in representing Mr. Zirko, notwithstanding it was his own ineffectiveness that he was arguing. See *People v. Brown*, 2017 IL App (3d) 140921, ¶ 34. Arguing one's own ineffectiveness goes against human nature and rational behavior because it requires the attorney to zealously argue that he did a poor job of representing his client, the very thing that the client hired the attorney for and relied upon him to do. It cannot be said that attorney Richards vigorously represented Mr. Zirko in postconviction proceedings when he made the claim that he (attorney Richards) was ineffective for failing to introduce the eczema photographs, but he failed to support that argument *with the photographs that he referenced*. Contrary to the State's argument, it was not a matter of mere trial strategy. We can conceive of no strategic reason to make an exculpatory argument and then fail to provide photographic support which strengthens that argument. All of this supports a finding that attorney Richards labored under an actual conflict of interest. See *People v. Wilkerson*, 2016 IL App (1st) 151913, ¶ 47 (it is necessary to establish that an actual conflict of interest adversely affected the lawyer's performance).

¶ 26    Thus, we find that under these admittedly murky facts, the actions of attorney Richards are such that an actual conflict of interest existed when attorney Richards argued *his own* ineffectiveness as trial counsel and postconviction counsel, especially as it relates to his failure to introduce the eczema photographs in support of a counter argument to a key element of the State's evidence. We need not address Mr. Zirko's other contentions regarding an actual conflict because the failure to attach the eczema photographs, under these facts and circumstances, is sufficient to

find that attorney Richards fell short of his obligation to vigorously represent Mr. Zirko's interest during the postconviction proceedings. On that basis alone, Mr. Zirko is entitled to a new second-stage hearing with new counsel. In that there was an actual conflict of interest, we are required to vacate the order dismissing the postconviction petition and remand for the appointment of conflict-free postconviction counsel, who may file a new postconviction petition and raise whatever issues they find have merit. See *People v. Garcia*, 2018 IL App 5th 150363, ¶ 49. We emphasize that our ruling strictly holds that Mr. Zirko is entitled to a new second-stage proceeding with new counsel; we make no finding, nor prediction as to the ultimate outcome of the proceedings or to the merits of his underlying claims.

¶ 27    Because we find that an actual conflict of interest occurred here and are remanding the case for further postconviction proceedings on that basis, we need not address Mr. Zirko's argument that attorney Richards provided unreasonable assistance.

¶ 28    Finally, we address Mr. Zirko's argument that the trial court erred in denying his motion for substitution of judge. There is no absolute right to a substitution of judge in postconviction proceedings. *People v. Hall*, 157 Ill. 2d 324, 331 (1993). Rather, there is a preference for the judge who presided over a defendant's trial to also preside over the postconviction proceedings. *Id.* In order to obtain a different judge for postconviction proceedings, the defendant must show that allowing the same judge to preside over the case would result in "substantial prejudice." *People v. Townsend*, 2020 IL App (1st) 171024, ¶ 49. Prejudice means " 'animosity, hostility, ill will, or distrust towards [the] defendant.' " *Id.* (quoting *People v. Patterson*, 192 Ill. 2d 93, 131 (2000)). We review a trial court's ruling on a motion for substitution of judge under the manifest weight of the evidence standard. *People v. Mercado*, 244 Ill. App. 3d 1040, 1047 (1993). A decision is

against the manifest weight of the evidence where it is clearly erroneous or where the record reflects the opposite conclusion. *Id.*

¶ 29    Here, Mr. Zirko argues that the trial judge was prejudiced against him because during the trial, the judge "denigrated" defense counsel by admonishing counsel to refrain from smirking or laughing, and further that the judge claimed that he needed to "lecture" defense counsel. According to Mr. Zirko, the trial judge did not admonish counsel for the State for similar behavior. This behavior, even if it occurred, does not necessarily reflect "animosity, hostility [or] ill will" by the trial judge towards Mr. Zirko. We cannot say that the trial judge's admonishment "denigrate[d]" defense counsel. On the contrary, it appears to have ensured that the courtroom proceedings retained sufficient solemnity and dignity.[2] Likewise, the trial judge's expression of frustration by remarking that he had to lecture defense counsel is neither directed to nor indicative of hostility towards Mr. Zirko. Rather, it appeared to be an effort by the trial judge to maintain appropriate decorum by the attorneys in his courtroom. That is his role. Nothing in the record supports or suggests that the trial judge bore ill will towards Mr. Zirko personally because of Mr. Zirko's trial counsel's conduct.

¶ 30    Mr. Zirko also argues that the trial judge should have recused himself to avoid the appearance of bias. We note that Mr. Zirko did not file a motion for recusal, only a motion for substitution of judge for cause. As our supreme court has noted, "recusal and substitution for cause are not the same thing." *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 45. While we review a trial judge's decision regarding recusal for an abuse of discretion, "[t]here is no abuse of discretion

---

[2]The trial judge, in an unnotarized "affidavit," denied admonishing defense counsel for laughing. As Mr. Zirko correctly points out, this is contradicted by the record; however, the trial court, with a different judge presiding, did not consider the affidavit in its ruling that the trial judge who was the subject of the motion was not prejudiced against Mr. Zirko, so as to support a substitution of judge.

[simply because] the judge does not recuse himself on his own motion." *Chesler v. People*, 309 Ill. App. 3d 145, 154 (1999). In looking at the totality of circumstances in this case, we see no reason to deviate from this well-settled principle. Therefore, this argument likewise fails. We accordingly affirm the trial court's judgment denying Mr. Zirko's motion for substitution of judge.

¶ 31                              CONCLUSION

¶ 32    For the reasons stated, we affirm the circuit court of Cook County's judgment denying Mr. Zirko's motion for substitution of judge, but we vacate the circuit court's judgment dismissing Mr. Zirko's postconviction petition at the second stage. We remand this case to the circuit court for further postconviction proceedings consistent with this opinion.

¶ 33    Affirmed in part and vacated in part. Cause remanded.

2018 IL App 5th 150363

**No. 1-16-2956**

| | |
|---|---|
| **Cite as:** | *People v. Zirko*, 2021 IL App (1st) 162956 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 05-CR-6560, 05-CR-1516; the Hon. Timothy Chambers, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Stephen L. Gentry, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, John E. Nowak, and Jessica R. Ball, Assistant State's Attorneys, of counsel), for the People. |